REQUESTED BY: Stephen B. Curtiss, Director Nebraska Health and Human Services System, Department of Health and Human Services Finance and Support
In Attorney General Opinion Number 03017 dated June 4, 2003 ("Opinion No. 03017"), this office expressed the legal opinion that 1) pursuant to the provisions of Neb. Rev. Stat. § 71-7606(3) (Cum. Supp. 2002), the Nebraska Health and Human Service System ("NHHSS") erred in awarding a grant from the Nebraska Health Care Cash Fund (the "Cash Fund"); and 2) the grant was void as a matter of law. Based upon an order from the United States District Court for the District of Nebraska in Case No. 4:03CV3329, dated October 10, 2003, and further research related to these issues, we amend Opinion No. 03017 as detailed herein.
The grant that was the subject of Opinion No. 03017 was awarded pursuant to the Nebraska Health Care Funding Act, Neb. Rev. Stat. §§ 71-7605
to 71-7614 (Reissue 1996, Cum. Supp. 2002, and Supp. 2003) ("NHCFA"). Although the Legislature has not appropriated funds for grants under the Act since 2002, it could do so in future legislative sessions. As NHHSS officials could be subject to legal action pursuant to Neb. Rev. Stat. §84-216 for issuing grants in violation of the interpretation in Opinion No. 03017 in implementing the Act, it is necessary to amend Opinion No. 03017.
The NHCFA created the Nebraska Health Care Council ("Council") and provided for grants for public health purposes as defined by the Council and as adopted in rules and regulations of the Department of Health and Human Services Finance and Support ("HHSFS"). Funds as appropriated by the Legislature from the Cash Fund are used for grants awarded by the Council, subject to the review and approval of the HHSFS. Cash Fund grant funds may not be used for abortion, abortion counseling, or referrals for abortion. Neb. Rev. Stat. § 71-7606.
In Rust v. Sullivan, 500 U.S. 173 (1991), the United States Supreme Court stated that "the government may `make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds.'" Rust, 500 U.S. at 192-93 (quoting Maher v. Roe, 432 U.S. 464 (1977)).
The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other. A legislature's decision not to subsidize the exercise of a fundamental right does not infringe upon the right.
Rust, 500 U.S. at 193 (citations omitted).
 As long as a government grant program does not require a grantee to give up abortion-related speech, but merely requires that the grantee keep such abortion-related activities separate and distinct from that government grant program's activities, then the program is not an unconstitutional infringement on the grantee's speech protected by the First Amendment. See Rust, 500 U.S. at 196. Thus, the NHCFA's prohibition against using grant funds for abortion, abortion counseling, or referrals for abortion, is constitutionally sound.
"In 1970, Congress enacted Title X of the Public Health Services Act ,84 Stat. 1506, as amended, 42 U.S.C. §§ 300 to 300a-6, which provides federal funding for family-planning services." Rust v. Sullivan,500 U.S. 173 (1991). Projects funded under Title X must meet certain requirements as set forth in 42 C.F.R. §§ 59.3 to 59.5, including providing pregnant women the opportunity to be provided information and counseling regarding pregnancy termination, and if requested, referral for pregnancy termination. See 42 C.F.R. § 59.5(a)(5). "The regulations [provided by Title X] govern the scope of the Title X project's activities, and leave the grantee unfettered in its other activities." Rust, 500 U.S. at 196. The Supreme Court's ruling in Rust would thus enable organizations to receive grants for Title X projects, which require the provision of pregnancy termination information, and remain eligible for grants from the Cash Fund, provided the organization was capable of keeping the funding and the projects' activities entirely separate and distinct.
Opinion No. 03017 provides, in part, that:
 [O]rganizations that accept federal grants pursuant to 42 C.F.R. § 59.5(a)(5) and are required by the section to provide abortion counseling and referrals for abortion, cannot also accept funds from the Cash Fund. An entity receiving both grants cannot fulfill the requirements of 42 C.F.R. § 59.5(a)(5) without violating § 71-7606, and vice versa. (emphasis added)
The provisions and restrictions pertinent to Title X are applicable only to the projects funded by Title X. Therefore, to the extent that Opinion No. 03017 holds that an "entity" cannot accept Title X funds and NHCFA Cash Funds, it is incorrect. As addressed herein, an entity which segregates a Title X project from the remaining activities of its operations may then be eligible for grants from the Cash Fund. Opinion No. 03017 is thus amended to state that an entity's "project or program" that receives both grants cannot fulfill the requirements of42 C.F.R. § 59.5(a)(5) without violating § 71-7606, and vice versa.
According to the United States Supreme Court in Rust v. Sullivan, it would be acceptable to require the use of separate facilities, personnel, and accounting records to ensure that projects maintain an objective integrity and independence from prohibited abortion activities. While this office maintains that the Teen Clinic Pilot Project grant was in violation of the NHCFA, that matter is pending in litigation and the facts related thereto will not be addressed in this amendment to Opinion No. 03017. In considering similar grants in the future, though, the Council should ensure that grantees that receive Title X funds and apply for Cash Fund grants assure that the utilization of those funds will be for distinct programs or projects that are segregated from prohibited abortion-related activities.
Opinion No. 03017 is hereby amended only to the extent set forth above. All other provisions of said Opinion remain as originally written.